BANK OF THE METROPOLIS, Respondent, *v.* GEORGE T. JARVIS, as
Receiver of the LOUISVILLE, EVANSVILLE AND ST. LOUIS CONSOLI-
DATED RAILROAD COMPANY, Appellant, Impleaded with DAVID J.
MACKEY and Others, Defendants.

*Extension of time of payment of a debt — when a good consideration for an assign-
ment of further collateral, although, until after the date at which the same collat-
eral was assigned to a third party, the extension might, because of a misrepresenta-
tion of fact, have been set aside.*

David J. Mackey, being indebted to the Bank of the Metropolis on two overdue
promissory notes, applied to the bank for an extension thereof. The bank
consented to grant the extension if Mackey would furnish additional collateral,
which Mackey agreed to do, offering as such security some railroad bonds,
which were then held as collateral by the City National Bank, and were also
subject to an attachment and to an injunction order issued in proceedings sup-
plementary to execution. November 11, 1893, Mackey wrote to the Bank of
the Metropolis inclosing an order directing the City National Bank to hold for
the Bank of the Metropolis his equity in the collateral held by the City
National Bank. He stated in the letter that the attachment and injunction
order had been taken care of, and authorized the Bank of the Metropolis to
deliver the order to the City National Bank, " with the understanding that you
shall have whatever equity there remains there to me over and above the
attachment, without any obligation on your part to extend the notes; but if
the attachment herein referred to is removed within the next week, then it is
understood that the notes are extended as herein provided."
A few days later Mackey assigned to third parties the collateral held by the City
National Bank. A week or two weeks later Mackey informed the Bank of the
Metropolis that there was no indebtedness against the collateral and received
the extension of time. The injunction order in the supplementary proceedings
was vacated thereafter, on December 21, 1893, and the attachment was with-
drawn on December 26, 1893.
*Held,* that the Bank of the Metropolis was a holder or transferee for value of
Mackey's interest in the collateral held by the City National Bank, notwith-
standing that at any time between the date of Mackey's letter and the day
when the attachment was withdrawn, the Bank of the Metropolis could have
brought suit upon the overdue notes.

APPEAL by the defendant, George T. Jarvis, as receiver of the
Louisville, Evansville and St. Louis Consolidated Railroad Com-
pany, from a judgment of the Supreme Court in favor of the
plaintiff, entered in the office of the clerk of the county of New

York on the 19th day of February, 1901, upon the report of a referee.

*John A. Garver,* for the appellant.

*William V. Rowe,* for the respondent.

Judgment affirmed, with costs, on opinion of referee.

Present — VAN BRUNT, P. J., O'BRIEN, INGRAHAM, McLAUGHLIN and HATCH, JJ.

The following is the opinion of HAMILTON ODELL, referee :

HAMILTON ODELL, Referee :

This is a controversy between the plaintiff and the defendant George T. Jarvis, as receiver, over a fund of $15,000, the proceeds of $100,000 of second mortgage bonds of the Peoria, Decatur and Evansville Railroad Company. Both parties claim through or under the defendant David J. Mackey, the former owner of the bonds. The facts on which the plaintiff's claim is founded are as follows :

On November 11, 1893, the said Mackey was indebted to the plaintiff as maker of two promissory notes, one for the sum of $35,000, dated June 12, 1893, and payable four months thereafter, and the other for the sum of $5,000, dated August 9, 1893, and payable four months thereafter ; and also as indorser of a third note for $25,000, made by the Peoria, Decatur and Evansville Railroad Company, dated July 26, 1893, and payable two months thereafter. All of the notes were partially secured by collaterals. The two notes for $25,000 and $35,000 respectively were overdue. Mackey was unable to take them up, and applied to the plaintiff for an extension of time. The plaintiff's president testifies : " Mr. Mackey asked for an extension, and we told him we must have more collateral — more margin. * * * He applied to have the notes renewed, and we told him we would do it, that is, if he would give us additional collateral, which he agreed to do in this 100,000 of Peoria, Decatur & Evansville Railroad."

At this time the bonds were in the possession of the National City Bank, which held them as security for a loan theretofore made to Mackey. They were also subject to an attachment which had

been issued in an action against Mackey, brought by the New York Security and Trust Company, and on the second of November the City Bank, as a party having property of a judgment debtor, had been served with an order, containing the usual injunction, in proceedings supplementary to execution upon a judgment recovered against Mackey by the Seaboard National Bank. Following the arrangement for an extension above referred to, and on said eleventh of November, Mackey wrote the plaintiff a letter, in which, after referring to his indebtedness to the plaintiff on the said three notes for $35,000, $5,000 and $25,000 respectively, he said: "I would say to you that, conditioned on your extending the payment of all such notes until the 11th day of January, 1894, I have written a letter, which I herewith enclose, to the City Nat'l Bank, No. 52 Wall St. authorizing them to hold for you the equity that I have in certain collateral deposited with them. * * * There is an existing attachment on the collateral with the City National Bank, but that attachment is to be removed within the next week. I authorize you to deliver to the City National Bank the letter that I herewith enclose, immediately, and with the understanding that you shall have whatever equity there remains there to me over and above the attachment, without any obligation on your part to extend the notes; but if the attachment herein referred to is removed within the next week, then it is understood that the notes are extended as herein provided." In a postscript the writer said: "There are two liens filed under the City National Bank collaterals of mine, the New York Security & Trust Co. and the Seaboard National Bank; both have been taken care of, and the attachments are to be removed next week." In the letter to the City Bank Mackey directed the bank to hold the bonds (subject to its lien) "for any existing indebtedness of myself, either as maker of promissory notes or endorser of promissory notes held by the Bank of the Metropolis, of the City of New York, and this will be your authority for so doing." On November thirteenth the City Bank wrote the plaintiff, acknowledging the receipt of Mackey's letter of the eleventh, and saying: "We will do whatever we can to protect your interests in the matter referred to therein." A few days later Mackey assigned to E. P. Huston and W. J. Lewis of Evansville, Ind. (through whom the defendant Jarvis claims), the said railroad

bonds and other collateral held by the City Bank. It is admitted that the injunction order contained in the order in supplementary proceedings in the case of the Seaboard Bank was vacated on December 21, 1893, and that the attachment in the case of the New York Security and Trust Company was withdrawn on December twenty-sixth.

The defendant Jarvis insists that the plaintiff has failed to show any right in or title to the fund; that there was no legal assignment to the plaintiff by Mackey of his interest in the bonds; that there was no agreement on the part of the plaintiff to extend the notes; and that the proposed transfer of the bonds to the plaintiff as additional security came to nothing, because the plaintiff was not to be bound to grant the extension asked for unless the attachment of the Security and Trust company was vacated during the following week, and the attachment was not gotten rid of for a long time thereafter. It seems to me that the facts of the case justify a contrary conclusion. They may be summarized as follows:

The notes were overdue; Mackey applied for time; the plaintiff agreed to grant it if furnished with additional security; this Mackey agreed to give; he offered as such security the 100 Peoria and Decatur bonds then held as collateral by the City Bank; it was satisfactory to the plaintiff; Mackey directed the City Bank to hold the bonds, subject to its prior claim, for the plaintiff's benefit, that is, for his indebtedness to the plaintiff as maker or indorser, which the City Bank in substance agreed to do; at the same time he notified the plaintiff that the bonds were then subject also to the lien of an attachment which would be removed during the next week, and in his letter of notification said that if the attachment "is removed within the next week, then it is understood that the notes are extended as herein provided." Thereafter "within one week or two weeks," he informed the plaintiff "that it was all cleaned up, there was no indebtedness against it," and the plaintiff gave him the extension.

The learned counsel for the receiver argues that at any time between the eleventh of November, the date of Mackey's letter to the plaintiff, and the twenty-sixth of December, the day when the attachment was withdrawn, the plaintiff could have brought suit upon the overdue notes, and that such suit could not have been

defended by Mackey on the ground that payment of the notes had been extended. That may be so, but it does not prove that the plaintiff was not a holder or transferee for value of Mackey's interest in the bonds. If the plaintiff had discovered that Mackey's promise to remove the attachment had not been kept, and that his subsequent assurance that "it was all cleaned up" was not true, it might have taken immediate steps to enforce payment of the notes, and there could have been no defense, because Mackey's right to *demand* an extension under his arrangement with the plaintiff depended upon the attachment being removed in accordance with his stipulation. But in my judgment the plaintiff might safely rely, as it undoubtedly did rely, upon the representations of Mackey — *first*, that the attachment had "been taken care of" and would be removed, and, *second*, that "it was all cleaned up." As between the plaintiff and Mackey, the plaintiff was not bound to make inquiry, or otherwise test the truth of what he said. It believed his statements, and so believing, gave him the indulgence he requested. Mackey, therefore, received from the plaintiff the very consideration for which he made the transfer of his interest in the bonds.

In *Mutual Life Insurance Company* v. *Smith* (23 Hun, 535) the court cited with approval the early case of *Mapes* v. *Sidney* (Cro. Jac. 683) where the defendant was held liable upon his promise to pay a debt in consideration that the plaintiff would forbear to sue one F. S. upon it, and it appeared that the forbearance had in fact been secured. Judge DANIELS said: "No time was there agreed upon, but still it was held that the plaintiff was entitled to recover, as the object the party had in view in making the promise was actually obtained." That is the case here. On the faith of the security he offered and the representations he made concerning it, Mackey obtained the extension he applied for, and neither he nor his subsequent transferees should now be permitted to assail the plaintiff's title to such security on the ground that such representations were not true.

As this conclusion disposes of the only question at issue in the case, it is not necessary to consider other points discussed by counsel. There should be judgment for the plaintiff.